IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

SALVADOR RIOS; MARIARELI RIOS,                  Civ. No. 6:22-cv-00244-AA

                Plaintiffs,                      **OPINION & ORDER**

      v.

FAY SERVICING, LLC; WILMINGTON
TRUST NATIONAL ASSOCIATION,
Trustee for MFRA Trust 2015-1,

                Defendants.

_____

AIKEN, District Judge.

    This case comes before the Court on Cross-Motions for Summary Judgment filed by Plaintiffs, ECF No. 78, and by Defendants, ECF No. 81. The Court concludes that these motions are appropriate for resolution without oral argument. For the reasons set forth below, Plaintiffs' Motion for Summary Judgment is DENIED and Defendants' Motion for Summary Judgment is GRANTED.

**LEGAL STANDARD**

    Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809

Page 1 –OPINION & ORDER

F.2d 626, 630 (9th Cir. 1987).  Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial.  *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  *T.W. Elec.*, 809 F.2d at 630-31.

## BACKGROUND

### I.    Evidentiary Issues

Defendants have objected to Paragraphs 5 through 7 and Exhibits H and J of the Karnes Declaration.  ECF No. 80.

Exhibit J to the Karnes Declaration is a document created by Plaintiffs' counsel entitled "Rios v. Fay Servicing: Ledger of Disputed Mortgage Payments."  Karnes Decl. ¶ 7.  "This document is a summary ledger that tracks the disputed mortgage payments, exhibiting exactly how [Plaintiffs'] $2,459.70 payments were treated as incomplete, diverted into 'unapplied' suspense balances, and automatically triggered

continuous late charge assessments rather than being properly credited to principal and interest." *Id.* Defendants object that Exhibit J is inadmissible hearsay, lacks foundation, and is not relevant. Plaintiffs did not respond to Defendants' objections.

"[O]bjections for relevance are generally unnecessary on summary judgment because they are duplicative of the summary judgment standard itself." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021) (internal quotation marks and citation omitted). If an exhibit is not relevant, then it cannot create a genuine dispute of material fact and so the Court could not rely on it in any event. *Id.* In this case, the Court will obviously not rely on any irrelevant exhibits in resolving the pending motions.

However, Defendants' other objections to Exhibit J are more significant. As Defendants point out, this is a summary generated not by an expert, but by Plaintiffs' counsel. The Karnes Declaration does not describe the source of the figures, other than that they are Plaintiffs' summary of disputed payments. Federal Rule of Civil Procedure 56(c) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "It is well established that unauthenticated documents cannot be considered on a motion for summary judgment," and "[a] document which lacks a proper foundation to authenticate it cannot be used to support a motion for summary judgment." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550-51 (9th Cir. 1989) Defendants are correct that, on

its face, the document lacks a proper foundation and so it cannot be considered in ruling on the Motions. Defendants' objections to Exhibit J are SUSTAINED.

Exhibit H is "the 'Account History' ledger" which "details the specific financial transactions, late charge assessments, and corporate advance adjustments made by Fay Servicing's system to the Rios account." Karnes Decl. ¶ 5. Defendants object that Plaintiffs "fail to explain the relevance of exhibit H in that they do[ ] not point to any specific line item in the exhibit nor explain how it establishes defendants' alleged breach." Def. Reply. At 2. ECF No. 93. Plaintiffs do cite to Exhibit H generally in their Motion for Summary Judgment for the assertion that "Recoverable Corporate Advances" were assessed, Pl. Mot. At 3, 8, and in their Reply for the proposition that $1,110 was assessed on June 30, 2021. Pl. Reply at 5. ECF No. 92. As previously discussed, relevance is not a valid objection on summary judgment. To the extent that Plaintiffs fail to identify the specific line items establishing breach, that is a litigation decision by Plaintiffs but not a basis for an evidentiary objection. It is not the task of the Court "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotation marks and citation omitted). Rather, it is Plaintiffs' responsibility "to identify with reasonable particularity the evidence that precludes summary judgment." *Id.* If "'the nonmoving party fails to discharge that burden . . . its opportunity is waived and its case wagered.'" *Id.* (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405 (6th Cir. 1992)). The Court will consider Exhibit H to the extent it is cited and relied upon by Plaintiffs, but the Court will not trawl through the document searching for specific

Page 4 –OPINION & ORDER

line items not identified by Plaintiffs.  Defendants' Objections to Exhibit H are otherwise OVERRULED.

Defendants also object to Paragraph 4 and Exhibit K to the Supplemental Karnes Declaration.  ECF No. 88.

Exhibit K contains excerpts from the deposition of Michael J. Paterno.  Supp. Karnes Decl. ¶ 3.  Defendants object that the deposition questions presented in Exhibit K were subject to objections during the deposition as speculative, compound, and argumentative.  In addition, "[t]he actual emails were not included with the declaration, nor were they apparently part of the deposition, nor was a deposition exhibit, if any, referencing corporate advances."  Def. Reply at 3.  Consistent with the summary judgment standard, the Court will not rely on any improper or speculative testimony in resolving the motion for summary judgment.  As to the actual emails, the Court obviously cannot rely on any evidence or exhibits that have not been presented as part of the motions.[1]  To that extent, Defendants' objections to Exhibit K are SUSTAINED.

---

[1] Paragraph 6 of the Karnes Declaration, to which Defendants also object, describes Exhibit I as a "true and correct copy of the email correspondence between myself and Defendants' litigation counsel, John Thomas, spanning August 17, 2021, through September 6, 2021."  Karnes Decl. ¶ 6.  The attached Exhibit I is not emails but is instead a single letter from Mr. Karnes to Mr. Thomas dated July 8, 2021.  Plaintiffs appear to concede that they have not included Exhibit I, calling the issue of the complete absence of the emails "a highly technical objection."  Pls. Reply at 8.  Plaintiffs claim that this objection is "moot and cured" because "Plaintiffs have filed the Supplemental Declaration of Keith D. Karnes, "which attaches the complete, unedited email exchange between Keith Karnes and John Thomas."  Id.  The Supplemental Declaration of Keith Karnes, ECF No. 88, has two attached exhibits: an excerpt of a deposition transcript and Exhibit N, a stipulation and general judgment from Linn County Circuit Court.  No "complete, unedited email exchange" was attached the Supplemental Declaration of Keith Karnes.  As noted, the Court cannot consider evidence that was not submitted to it.

Defendants have also objected to Paragraph 4 of the Supplemental Karnes Declaration, which includes Plaintiffs' counsel's inappropriate commentary on the evidence. The Court will disregard Plaintiffs' counsel's commentary which, in any event, takes the form of legal conclusions. Defendants' objections to Paragraph 4 of the Supplemental Karnes Declaration are SUSTAINED.

## II.   Background

On August 19, 2008, Plaintiffs Salvador Rios and Mariareli Rios signed a promissory note (the "Note") for $462,222.27 with Lenders Direct Capital. Paterno Decl. ¶ 4. ECF No. 84. To secure the Note, Plaintiffs executed a Deed of Trust on the subject property, along with the co-owners of the property, Randall and Tracy Hiday. *Id.* ¶ 5. The loan was assigned to Defendant Wilmington Trust National Association, Trustee for MFRA Trust 2015-1 ("Wilmington"). *Id.* ¶ 6. Defendant Fay Servicing, LLC ("Fay") began servicing the loan on February 21, 2018. *Id.*

Section 3 of the Deed of Trust requires Plaintiffs to make monthly payments of amounts due for taxes and hazard insurance into escrow, in addition to their payments for principal and interest. Paterno Decl. ¶ 7, Ex. 2, at 3-4.

In 2020, Plaintiffs initiated litigation against Defendants in Linn County Circuit Court, *Rios v. Fay Servicing LLC et al.,* Case No. 20CV11943, alleging breach of contract, breach of the duty of good faith and fair dealing, defamation, and intentional interference with contract related to Defendants' handling of the loan. Paterno Decl. Ex. 4, at 1. There was also related litigation in the U.S. District Court for the District of Oregon Bankruptcy Court, Case No. 11-63883-tmr12. *Id.*

Page 6 –OPINION & ORDER

In 2021, the parties reached a confidential settlement of the dispute during Plaintiffs' bankruptcy proceedings. Paterno Decl. ¶ 8, Ex. 4; Supp. Karnes Decl. Ex. N.

Among the terms of the settlement were that (1) the litigation would be dismissed with prejudice and "without an award of attorney fees, costs or disbursements to any party," and (2) that contemporaneously and "no later than June 30, 2021," Plaintiffs were to execute an attached "Loan Modification Agreement and Balloon Payment Rider." Paterno Decl. Ex. 4, at 1-2. Fay was to also "request deletion of the Loan's credit trade line with the credit reporting bureaus." *Id.* at 2. Fay deleted the credit tradeline in connection with the 2021 settlement agreement. Paterno Decl. ¶ 8. On the specific issue of attorney fees, the settlement agreement provided:

> The Parties agree that they shall bear their respective attorneys' fees and costs (including investigation and expert costs) incurred in connection with this Agreement, the Litigation, and any and all events or acts associated with this Agreement or the Litigation. However, in the event of any legal action arising out of or in any way relating to this Agreement, the interpretation thereof, or the failure of any party to perform the terms of this Agreement, the prevailing party in such action is entitled to recover all reasonable expenses and attorney's fees and costs, including attorney's fees and costs on appeal.

Paterno Decl. Ex. 4, at 2.

As of June 1, 2021, the "Unpaid Principal Balance" of the loan was $512,978.27 "consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized," with 4.25% interest on the interest-bearing principal balance. Paterno Decl. Ex. 4, at 12-13.

Like the original Deed of Trust, the loan modification agreement also contained terms governing the payment of escrow. Paterno Decl. Ex. 4, at 14-15. Plaintiffs were obliged to "comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments the Borrower is obligated to make under the Security Instrument." *Id.* at 13; *see also* Ex. 4, at 14 (Plaintiffs were notified in the loan modification agreement "that any prior waiver by Lender of Borrower's obligation to pay to Lender's Funds for any or all Escrow Items is hereby revoked and Borrower has been advised of the amount needed to fully fund the Escrow Items.").

"All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender." Paterno Decl. Ex. 4, at 14.

With regard to monthly payments, the loan modification agreement stated that

The Agreement changes the monthly principal and interest amount of your payment to $2,459.70, effective June 1, 2021. The taxes and insurance portion of the monthly payment is $500.00, with a total payment of $2,959.70 due June 1, 2021. Please note that the tax and insurance payment amount is subject to change upon escrow analysis.

Paterno Decl. Ex. 4, at 5.

"The escrow portion of the loan payment adjusts based on the escrow expenses, and is reviewed at least annually as taxes and insurance are paid and vary." Paterno Decl. ¶ 10. Escrow disclosures and change notices were sent to Plaintiff's counsel

setting forth the payment amount due based on the escrow adjustments.  Paterno Decl. ¶ 10, Ex. 9.  As contemplated by the loan modification, escrow analyses were conducted on Plaintiff's loan and the required escrow amounts increased and so Plaintiff's mortgage payment was increased to compensate.  Paterno Decl. Ex. 9, at 1.

In addition to Plaintiffs, the loan modification agreement also required the signatures of Randall and Tracy Hiday, as co-owners of the subject property "signing solely to acknowledge this Agreement, but not to incur any personal liability for the debt."  Paterno Decl. Ex. 4, at 16.  Plaintiffs did not obtain the signatures of the Hidays, "which caused a significant delay and hindered the defendant in implementing the modification."  Paterno Decl. ¶ 9.  Fay ultimately made an exception for the missing signatures from the Hidays, but "prior to the defendant making this accommodation, the monthly loan statements, which accurately reflected the pre-modified state of the loan balance, which was in default, were mailed to the borrowers as is the standard practice."  Paterno Decl. ¶ 9; *see also* Second Thomas Decl. Ex. 1 (As of August 23, 2021, "[t]he settlement loan modification is being boarded to Fay's system, but the August statement will still show the pre-mod data. So that will go to you, and then once the mod is fully boarded, the statements reflecting the same will go to the debtor per your instruction."); Rios Decl. ¶ 5, Ex. B (statements from September 2021 showed large past-due amounts).  This was done because the "executed loan modification agreement was the only instrument that could legally modify the agreed upon loan terms, not the Settlement and Release

Agreement." Paterno Decl. ¶ 9. "Fay Servicing, LLC is legally required to send periodic statements for residential mortgage loans." Second Paterno Decl. ¶ 9. ECF No. 91. Of note, these mortgage statements were sent to Plaintiffs' counsel, rather than directly to Plaintiffs. Rios Decl. Ex. B.

Some statements issued to Plaintiffs by Fay included $1,110 for "Recoverable Corporate Advances" in the account summary. Rios Decl. ¶ 5.[2] Plaintiffs appear to assume that these Recoverable Corporate Advances were attorney fees, *id.*, but there is no indication in the record that the Recoverable Corporate Advances were attorney fees. Supp. Karnes Decl. Ex. K, at 13 (Corporate representative testified at his deposition that, looking only at the mortgage statement, he could not say what the charge was specifically for). However, these charges were apparently cancelled and "Defendants were not charging Plaintiffs 'recoverable corporate advances' in connection with the loan modification when Plaintiffs decided to stop paying the escrow portion of their loan." Paterno Decl. ¶ 11.

In December 2021, Plaintiffs ceased paying the escrow portion of their monthly payments. Paterno Decl. ¶ 11, Exs. 6, 7; *see also* Rios Decl. ¶ 6 (Plaintiffs affirm that they "faithfully mailed our required monthly payment of $2,459.70 to Fay

---

[2] The Rios Declaration claims that these charges were included in the November and December 2021 statements. Rios Decl. ¶ 5. The Court has reviewed Exhibit B, which Paragraph 5 of the Rios Declaration relies on. Exhibit B shows that November 2021 was the first month in which the pre-settlement balances were not included and, rather than showing large "Recoverable Corporate Advances" being *added* to their bill, it shows that a large "Corporate Advance Adjustment" was applied to *reduce* their bill and eliminate previously assessed charges and fees. Rios Decl. Ex. B, at 24. No "Recoverable Corporate Advance" was included in the calculation of Plaintiff's December 2021 bill. Rios Decl. Ex. B, at 27. As far as the Court can tell, although the sum appears in the "Account Information" section of the statement, no effort was made to collect a $1,110 Recoverable Corporate Advance from Plaintiffs.

Servicing every single month."), Ex. B, at 27 (Plaintiffs did not pay the escrow portion of their loan in December 2021). Plaintiffs assert that they "maintained [their] own acceptable hazard insurance on the property," and the insurance coverage ordered by Fay was later cancelled. Rios Decl. ¶ 7. However, Fay was still advancing tax payments. Paterno Decl. ¶ 11, Ex. 8 (showing tax advances paid by Fay). Plaintiffs make no representations concerning payment of their property taxes. "Had plaintiffs been paying either the insurance or taxes themselves directly, Fay Servicing, LLC, or plaintiffs, would have received a refund from the hazard insurer and Linn County for the taxes they may have paid, . . . however Defendants received no such funds." Paterno Decl. ¶ 12.

As noted, Plaintiffs were paying only $2,459.70 each month, Rios Decl. ¶ 6, representing the principal and interest on the loan, but not the escrow payments required by both the original Deed of Trust and by the loan modification agreement. "With each short payment the borrowers tendered only principal and interest, but not escrow, the loan fell into arrears and default." Paterno Decl. ¶ 11. "Once the loan was accelerated, plaintiff's tender of less than the loan reinstatement amount was insufficient," according to section 19 of the Deed of Trust. Second Paterno Decl. ¶ 12, Ex 2, at 9 (governing cure of default after acceleration). Plaintiffs agree that, beginning in 2024, Fay rejected their payments as insufficient. Rios Decl. ¶ 8.

Defendants have not commenced a foreclosure action against Plaintiffs since the settlement agreement. Paterno Decl. ¶ 13. However, Defendants have initiated Oregon Foreclosure Avoidance Program procedures. Rios Decl. ¶ 9.

Page 11 –OPINION & ORDER

## DISCUSSION

Plaintiffs bring claims for (1) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* as to Fay; (2) violation of the Oregon Unfair Trade Practices Act ("UTPA"), ORS 646.608 as to Fay; (3) breach of contract as to both Defendants; (4) intentional infliction of emotional distress ("IIED") as to both Defendants; and (5) negligence as to Wilmington. Defendants move for summary judgment as to all claims. Plaintiffs move for summary judgment as to all claims except for IIED and negligence.

### I.    FDCPA

Plaintiffs allege that Fay violated the FDCPA by "attempting to collect, through monthly statements, amounts Plaintiffs do not owe, misapplying payments received from Plaintiffs, failing to abide by the modification agreement that was part of the settlement of the Linn County Case, [and] falsely reporting Plaintiffs delinquent on their credit reports." Compl. ¶ 45.[3]

The last allegation, that Fay falsely reported Plaintiffs as delinquent on their credit reports, 15 U.S.C. § 1692e(8), is contradicted by the record on summary judgment, which shows that Fay deleted the credit tradeline in connection with the

---

[3] The Complaint alleges that Fay failed to disclosure that Fay's monthly statements were "from a debt collector" in violation of 15 U.S.C. § 1692e(11). Compl. ¶ 45(e). The allegation is not mentioned in Plaintiffs' motion and appears to have been abandoned. The allegation is also contradicted by the record, which shows that the mortgage statements did include the required disclosure. Rios Decl. Ex. B, at 15 ("Fay Servicing is a debt collector, and information you provide to us will be used for that purpose."), 21 ("This communication is from a debt collector and it is for the purposes of collecting a debt and any information obtained will be used for that purpose. This notice is required by the provisions of the Fair Debt Collection Practices Act and does not imply that we are attempting to collect money from anyone who has discharged the debt under the bankruptcy laws of the United States."), 23 (same), 26 (same), 34 (same).

2021 settlement.  Paterno Decl. ¶ 8.  Plaintiffs did subsequently default on the loan by failing to pay the required escrow amount, *id.* ¶ 11; Rios Decl. ¶ 8, and so any reporting of that default would not be false.

Plaintiffs also assert that Fay violated 15 U.S.C. § 1692f, which prohibits "unfair or unconscionable means to collect or attempt to collect any debt."[4]  Plaintiffs assert that it is "fundamentally unconscionable to affirmatively intercept and mail back a borrower's valid, on time payments, label the account in 'active foreclosure,' and use that manufactured delinquency to trigger state foreclosure avoidance proceedings against the borrowers' home."  Pls. Mot. At 6.  This claim fails because Plaintiff's default is a direct result of their own decision not to pay the escrow sums required by the loan and the loan modification.  The other consequences, such as the rejection of insufficient payments or the initiation of foreclosure avoidance measures flow directly from that decision.  Fay did not "manufacture" the delinquency of Plaintiffs' loan and, on this record, their conduct is not unconscionable.

Plaintiffs' principal FDCPA claim is that the mortgage statements sent to Plaintiffs, via their counsel, between June 2021 and October 2021, after the settlement but before the "boarding" of the loan modification agreement, falsely represented the amount and status of the loan because they showed the pre-modification defaulted amount.  The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  Specifically, 15 U.S.C. § 1692e(2) prohibits

---

[4] 15 U.S.C. § 1692f is not specifically alleged in Plaintiffs' Complaint, which alleges only violation of § 1692e.  Compl. ¶ 45.

"[t]he false representation of . . . the character, amount, or legal status of any debt." This is assessed according to the "least sophisticated debtor standard," which "does not ask the subjective question of whether an individual plaintiff was actually misled by a communication," but rather "asks the objective question of whether the hypothetical least sophisticated debtor would likely have been misled." *Afewerki v. Anaya Law Grp.*, 868 F.3d 771, 775 (9th Cir. 2017). "If the least sophisticated debtor would likely be misled by a communication from a debt collector, the debt collector has violated the Act." *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007) (internal quotation marks and citation omitted). The least sophisticated debtor's interpretation of the collection notice cannot be "bizarre or unreasonable," but the least sophisticated debtor may be "uninformed, naïve, and gullible." *Afewerki*, 868 F.3d at 775 (internal quotation marks and citations omitted). However, "in assessing FDCPA liability, we are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to choose his or her response." *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1119 (9th Cir. 2014). "In other words, a debt collector's false or misleading representation must be 'material' in order for it to be actionable under the FDCPA." *Id.*

Here, Defendants maintain that the statements showing the pre-settlement defaulted amount were not "false" because only the loan modification agreement could actually change the terms of the loan and the implementation of the loan modification agreement was delayed by the lack of the Hidays' signatures.

Defendants stress that the Hidays' signatures were required by Oregon law and that, at the same time, they were required to issue mortgage statements to Plaintiffs.

It is not necessary for the Court to determine whether the statements were false because, even if the Court were to assume that they were, the claim would still fail. Plaintiffs were informed, via communication with their counsel, that the statements would still show the "pre-mod" data until "the mod is fully boarded." Second Thomas Decl. Ex. 1. The pre-mod data would be sent to Plaintiffs' counsel, rather than directly to Plaintiffs, but "once the mod is fully boarded, the statements reflecting the same will go to the debtor per [Plaintiffs' counsel's] instruction." *Id.*; *see also* Rios Decl. Ex. B (showing that the mortgage statements were sent to Plaintiffs' counsel, rather than directly to Plaintiffs). Plaintiffs were also informed, as part of the settlement, what the precise amount of their payment would be. Paterno Decl. Ex. 4, at 5.

The Court concludes that, under the circumstances[5]—direct information about the proper amount and timing of payments, clear communication about the pre-modification sums appearing on the statements until the loan modification was implemented in Fay's system, and the loan statements passing through counsel as an

---

[5] The Court may consider the specific factual circumstances surrounding the communication in determining whether the least sophisticated debtor standard and its corollary materiality requirement is satisfied. *See Afewerki v. Anaya Law Grp.*, 868 F.3d 771, 776 (9th Cir. 2017) (noting that "a voicemail message that failed to fulfill a statutory requirement to identify each communication as being from a 'debt collector' was not a material violation when the debtor clearly knew who the debt collector was because the two has exchanged eight emails and a phone call in the preceding two weeks." (citing *Davis v. Hollins Law*, 832 F.3d 962, 967 (9th Cir. 2016)).

intermediary[6], even the least sophisticated borrower would not have been misled about the nature of the debt or the amount owed.

Defendants are entitled to summary judgment on Plaintiffs' FDCPA claim.

## II.    UTPA

Plaintiffs allege that Fay's "conduct in attempting to collect, through monthly statements, amounts Plaintiffs do not owe, misapplying payments received from Plaintiffs, failing to abide by the modification agreement that was a part of the settlement of the Linn County Case, falsely reporting Plaintiffs delinquent on their credit reports, is a violation of the duty to act in good faith imposed by OAR 137-020-0805," and so a violation of the UTPA, ORS 646.608. Compl. ¶ 48.

The UTPA allows a private right of action for persons who have suffered an "ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608." ORS 646.638(1). To state a claim under the UTPA, a plaintiff must allege: (1) a violation of ORS 646.608(1); (2) causation; (3) damage; and (4) willfulness by Defendant. *Colquitt v. Mfrs. and Traders Trust Co.*, 144 F. Supp.3d 1219, 1231 (D. Or. Oct. 9, 2015).

---

[6] The Court notes that the use of Plaintiffs' counsel as an intermediary significantly undermines Plaintiffs' claim. Rios Decl. Ex. B (showing the disputed mortgage statements were all sent to Plaintiffs through their counsel). In enacting the FDCPA, "Congress viewed attorneys as intermediaries able to bear the brunt of overreaching debt collection practices from which debtors and their loved ones should be protected" because "[u]nsophisticated consumers are easily bullied and mislead. Trained attorneys are not." *Guerrero v. RJM Acquisitions, LLC*, 499 F.3d 926, 935 (9th Cir. 2007). "[W]hen an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior." *Id.* at 937 (internal quotation marks and citation omitted). "[C]ommunications directed only to a debtor's attorney and unaccompanied by any threat to contact the debtor are not actionable under the Act." *Id.* at 936.

Critically, "[p]leading an ascertainable loss of money or property is an essential element of a private UTPA claim." *Egbukichi v. Wells Fargo Bank, NA*, 184 F. Supp.3d 971, 978 (D. Or. 2016) (internal quotation marks and citation omitted). To be ascertainable, the loss must be "capable of being discovered, observed or established" and "must be objectively verifiable" and it must "be specifically of money or property, real or personal." *Pearson v. Philip Morris, Inc.*¸ 358 Or. 88, 117 (2015). "[N]oneconomic losses cognizable in a civil action—such as physical pain, emotion distress, or humiliation—will not satisfy a private UTPA plaintiff's burden." *Id.* A threatened loss will not suffice, nor will money spent to forestall a loss constitute an ascertainable loss for purposes of the UTPA. *Paul v. Providence Health System-Oregon*, 237 Or. App. 584, 603-04 (2010).

Here, the Complaint does not allege an ascertainable loss. *See, e.g.,* Compl. ¶¶ 39 ("Due to Defendants' conduct, Plaintiffs have suffered lost financial opportunities, impaired credit, anger, frustration, worry, fear, and other negative emotions."), 50 (seeking unspecified economic damages and noneconomic damages, which are not recoverable under the UTPA). In response, Plaintiffs assert that they have suffered an ascertainable financial loss in the form of "out-of-pocket postage for rejected payments, perpetual late fees of $122.98 unlawfully assessed to their account balance, which lowers the plaintiffs' equity in the property, and the loss of the opportunity to refinance their loan at a lower interest rate due to Fay's fabricated delinquency." Pl. Resp. at 5. ECF No. 87.

The record establishes, however, that Plaintiffs ceased to pay the escrow portion of their mortgage payment, which is required by both the Deed of Trust and the loan modification, which resulted in the default and acceleration of their loan. Plaintiff's delinquency is real and not "fabricated." The payments were properly rejected because they did not cure the default, nor were they for the proper amount as they lacked the required escrow payment. An "ascertainable loss must be a result of the unlawful trade practice. That is, the unlawful trade practice must have caused the ascertainable loss that the plaintiff suffered." *Pearson¸*358 Or. at 117. To the extent that Plaintiffs' losses are ascertainable, they were caused by Plaintiffs' own conduct and not the acts of Defendants. Defendants are entitled to summary judgment on Plaintiffs' UTPA claim.

## III.   IIED

"To prevail on a claim for IIED, a plaintiff must show that (1) the defendant intended to inflict severe emotional distress on the plaintiff; (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *McGanty v. Staudenraus*, 321 Or. 532, 543 (1995). Plaintiffs' IIED claim alleges, in a general way, that Defendants' "conduct" gives rise to their claim. Compl. ¶¶ 57-60.

"Whether the conduct alleged is sufficiently extreme or outrageous to be actionable is a fact-specific inquiry, one to be made on a case-by-case basis considering the totality of the circumstances." *Delaney v. Clifton*, 180 Or. App. 119, 130 (2002).

"Despite the fact that deciding the contours of social norms is precisely the sort of inquiry that is appropriately undertaken by a jury, in the context of an IIED claim, the court, functioning as a gatekeeper, performs that role in the first instance." *Clemente v. State*, 227 Or. App. 434, 442 (2009). Among the considerations in making that determination is the "whether a special relationship exists between a plaintiff and a defendant" that "shapes the interpersonal dynamics of the parties." *House v. Hicks*, 218 Or. App. 348, 360 (2008).

Creditor-debtor is such a relationship, but that does not guarantee that a creditor's actions will constitute IIED. *See, e.g., Turman v. Central Billing Bureau*, 279 Or. 443, 446-49 (1977) (finding that creditor behavior that included threats, shouting, insults, and vulgar verbal abuse was sufficient to sustain a claim for IIED). However, even acts that are "rude, boorish, tyrannical, churlish, and mean" are not sufficient to establish that they are "outrageous in the extreme." *Patton v. J.C. Penny Co., Inc.*, 301 Or. 117, 124 (1986) (abrogated in part on other grounds by *McGanty*, 321 Or. at 549-50). Furthermore, "[a] difference of opinion as to the meaning and application of the terms of a contract could rarely, if ever, amount to outrageous conduct." *State Farm Mut. Auto. Ins. Co. v. Berg*, 70 Or. App. 410, 418 (1984).

Here, Plaintiffs argue that Defendants' "institutional arrogance" and refusal to accept Plaintiff's incomplete payments demonstrate intentional infliction of emotional distress. Pls. Resp. at 5-6. This falls well below the standard established by the Oregon courts for IIED and no reasonable jury could find for Plaintiffs on this claim. Defendants are entitled to summary judgment on Plaintiffs' claim for IIED.

## IV.    Breach of Contract

Plaintiffs allege that Defendants failed to abide by the modification agreement, the settlement agreement, and the original promissory note as modified.  Compl. ¶¶ 52-53.  To state a claim for breach of contract under Oregon law, a plaintiff must allege the existence of a contract, its relevant terms, the plaintiff's full performance and lack of breach and the defendant's breach resulting in damages to plaintiff. *Slover v. Oregon State Bd. of Clinical Social Workers*, 144 Or. App. 565, 570 (1996).

Here, although Plaintiffs claim they "flawlessly" performed the contract, that assertion is belied by the record and their own admission that, beginning in December 2021, they paid only the principal and interest on the loan and omitted the escrow amounts required by the original promissory note and by the loan modification agreement.  Rios Decl. ¶ 6; Paterno Decl. ¶ 11.

Plaintiffs assert that they were prevented from performing because they didn't know how much to pay.  *See Anderson v. Allison*, 256 Or. 116, 121 (1970) (recognizing the general rule that "where the conduct of the defendant has prevented the performance of a contract provision by the plaintiff, he cannot avail himself of any such failure to perform.").  This argument is likewise contradicted by the record: "The escrow portion of the loan payment adjusts based on the escrow expenses and is reviewed at least annually as taxes and insurance are paid and vary.  Escrow disclosures and change notices were sent to Plaintiff[s'] counsel setting forth the payment amount based on escrow adjustments."  Second Paterno Decl. ¶ 10; *see also* Ex. 9 (escrow disclosure forms showing the change in the escrow amount sent to

Plaintiffs care of their attorney with the first such statement prepared following an escrow analysis conducted on October 27, 2021). Plaintiffs were advised that their escrow payment would eventually change when they entered into the settlement agreement in the cover letter to the loan modification agreement:

> The Agreement changes the monthly principal and interest amount of your payment to $2,459.70, effective June 1, 2021. The taxes and insurance portion of the monthly payment is $500.00, with a total payment of $2,959.70 due June 1, 2021. *Please note that the tax and insurance payment amount is subject to change upon escrow analysis.*

Paterno Decl. Ex. 4, at 5 (emphasis added).

In other words, the parties agreed that Plaintiffs would pay a total of $2,959.70 until an escrow analysis was done and then Plaintiffs would be responsible for paying the principal, the interest, and whatever the assessed escrow amount would be. Although Plaintiffs apparently attribute the increase in the payments to "Recoverable Corporate Advances," rather than an increase in the amount of escrow required, "Defendants were not charging Plaintiffs 'recoverable corporate advances' in connection with the loan modification when Plaintiffs decided to stop paying the escrow portion of their loan." Paterno Decl. ¶ 11.

Although Plaintiffs assert that Defendants breached the duty of good faith and fair dealing by requiring them to "guess" what their payment amount was, Pl. Resp. at 4, the record does not indicate that any such thing occurred. As discussed above, Plaintiffs agreed to pay $2,959.70, which included $500 for escrow payments, until an escrow analysis determined the required amount for escrow, which was done and the total communicated to Plaintiffs in letters sent to them care of their attorney.

Page 21 –OPINION & ORDER

Second Paterno Decl. Ex. 9.  No guesswork was required.  Despite this, Plaintiffs ceased to make the required escrow payments entirely and this breach is fatal to their claim for breach of contract.

Furthermore, "if a written contract between the parties expressly allows for a particular remedy by one of the parties, in the face of a specified breach, the parties' objectively 'reasonable expectations' under the contract include the invocation of that remedy in the face of that breach," and a party "invoking its express, written contractual right does not, merely by so doing, violate its duty of good faith." *Uptown Heights Assocs. Ltd P'ship v. Seafirst Corp.*, 320 Or. 638, 645 (1995).  Defendants were entitled to accelerate the loan and reject insufficient payments in the event of default and Plaintiffs defaulted by failing to pay the required escrow sums.  Defendants are entitled to summary judgment on this claim.

## V.  Negligence

In the Complaint, Plaintiffs allege that Wilmington "breached its duty to Plaintiffs by employing a servicer who is unable to properly account for payments and send correct billing statements."  Compl. ¶ 63.  In their Response to Defendants' Motion for Summary Judgment, Plaintiffs characterize their claim differently, arguing that a jury could find that Wilmington "acted unreasonably and created a foreseeable risk of severe emotional and financial harm to Plaintiffs by failing to intervene while its servicing agent, Fay, systematically rejected valid mortgage

payments and unlawfully initiated foreclosure proceedings against Plaintiffs' family farm." Resp. 7.[7]

Under Oregon law, to maintain a claim of negligence, a plaintiff must plead and prove (1) that the defendant's conduct caused a foreseeable risk of harm; (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that the defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of the plaintiff's harm, and (5) that plaintiff was within the class of persons and the plaintiff's injury was within the general type of potential incidents and injuries that made the defendant's conduct negligent. *Son v. Ashland Comm. Healthcare Servs.*, 239 Or. App. 495, 506 (2010) (internal quotation marks and citations omitted). "Under *Fazzolari* [*v. Portland School Dist. No. 1J*, 303 Or. 1 (1987)], the Supreme Court has abandoned the traditional notion of 'proximate cause,' as well as the concept of a common-law duty in the absence of a special relationship." *Id.*

Here, Plaintiffs do not plead foreseeability, nor does the record on summary judgment support foreseeability. This alone is fatal to Plaintiffs' claim. Furthermore, the relationship between a creditor and a debtor is not generally one that imposes a heightened duty of care. *Uptown Heights*, 320 Or. at 650. In the absence of such a duty of care, the creditor is under no obligation to refrain from invoking the creditor's contractual rights in the event of a default. *Id.* at 645. Here, the record at summary

---

[7] Plaintiffs' argument is contrary to the record on summary judgment, which shows that Defendants have not attempted to foreclose on Plaintiffs' loan, at least so far. Paterno Decl. ¶ 13. At most, Plaintiffs have shown that Defendants initiated foreclosure *avoidance* measures. Rios Decl. ¶ 9, Ex. F.

judgment establishes that Plaintiffs unilaterally ceased to pay the required escrow portion of their loan and only paid the principal and interest, resulting in the default and acceleration of their loan. No reasonable jury could find for Plaintiffs on their claim for negligence. Defendants are therefore entitled to summary judgment on this claim.

In sum, Plaintiffs' Motion for Summary Judgment is DENIED and Defendants' Motion for Summary Judgment is GRANTED. Because Defendants are entitled to summary judgment on each of Plaintiffs' claims, it is not necessary for the Court to reach Plaintiffs' arguments on Defendants' affirmative defenses.

### CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment, ECF No. 78, is DENIED and Defendants' Motion for Summary Judgment, ECF No. 81, is GRANTED. Final judgment shall be entered accordingly.

It is so ORDERED and DATED this ____12th____ day of August 2026.

/s/Ann Aiken
ANN AIKEN
United States District Judge